J-A18011-25
J-A18012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| EDWIN RAMOS | : | No. 1450 EDA 2024 |

Appeal from the Order Entered May 23, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000713-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSUE BETANCOURT | : | No. 1449 EDA 2024 |

Appeal from the Order Entered May 23, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000714-2020

BEFORE:  OLSON, J., DUBOW, J., and BECK, J.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 18, 2025**

In this consolidated appeal,[1] the Commonwealth appeals from the May

23, 2024 orders entered in the Court of Common Pleas of Philadelphia County

_____

[1] For purpose of disposition, we consolidate *sua sponte* the appeals filed with
this Court at 1449 EDA 2024 and 1450 EDA 2024.  **See** Pa.R.A.P. 513.  The
prothonotary of this Court is directed to file a copy of the disposition at each
of the aforementioned dockets.

that dismissed the criminal charges filed against Josue Betancourt ("Betancourt") and Edwin Ramos ("Ramos") based upon a violation of Pennsylvania Rule of Criminal Procedure 600. After careful review, we vacate the orders and remand the cases for further proceedings.

The record reveals that Betancourt and Ramos were arrested in connection with an incident that occurred on August 16, 2019, in which Philadelphia police officers discovered Petro Perez ("Perez") lying on the highway in the area of A Street and East Louden Street in Philadelphia, Pennsylvania. Affidavit of Probable Cause, 10/22/19. Perez had been shot multiple times in the head and torso and was pronounced dead shortly thereafter. *Id.* Video surveillance showed a male running from the area of the shooting and tucking an object into his shorts before "jumping" on the back of a motorcycle being driven by a second male. *Id.* Both individuals then fled the scene on the motorcycle. *Id.* A United States Drug Enforcement Administration ("DEA") agent, who was interviewed after the incident by police detectives, identified the two males fleeing the scene on the motorcycle as Ramos and Betancourt.[2] *Id.*

_____

[2] The DEA agent was part of an undercover investigation, which had been ongoing since March 2018, into narcotic sales in the 3100 block of Weymouth Street in Philadelphia, Pennsylvania. Affidavit of Probable Cause, 10/22/19. The DEA agent explained that the target of the narcotics investigation was Felix Valentin ("Valentin") and that other persons who became known through the narcotics investigation included Ramos, Betancourt, and Perez. *Id.*

On October 22, 2019, the Commonwealth charged Ramos with murder (Count 1), conspiracy to commit murder (Count 2), persons not to possess, use, manufacture, control, sell, or transfer firearms (Count 3), firearms not to be carried without a license (Count 4), carrying firearms on public streets or public property in Philadelphia, Pennsylvania (Count 5), and possessing instruments of crime (Count 6).[3] Criminal Complaint, 10/22/19. The Commonwealth subsequently amended the criminal complaint filed against Ramos to include charges of intimidation of witnesses or victims (Count 7), and retaliation against a witness, victim, or party (Count 8).[4] That same day, October 22, 2019, the Commonwealth also charged Betancourt with murder (Count 1), conspiracy to commit murder (Count 2), persons not to possess,

_____

The Commonwealth alleged that, based upon law enforcement observations, Valetin "ran" the 3100 Block of Weymouth Street in Philadelphia, which was known to be a "lucrative narcotics trafficking block." Commonwealth Memorandum of Law, 1/21/21, at 2-3. Betancourt and Ramos allegedly worked for Valetin "with regard to drug dealing and enforcement." *Id.* at 3.

[3] 18 Pa.C.S.A. §§ 2502, 903, 6105(a)(1), 6106(a)(1), 6108, and 907(a), respectively. Police officers arrested Ramos in connection with these charges on October 23, 2019.

[4] 18 Pa.C.S.A. §§ 4952(a)(1) and 4953(a), respectively. The Commonwealth withdrew the charges filed against Ramos for firearms not to be carried without a license (Count 4) and carrying firearms on public streets or public property in Philadelphia, Pennsylvania (Count 5) at the conclusion of the preliminary hearing on January 24, 2020. Recently, this Court, in *Commonwealth v. Sumpter*, held that Section 6108 of the Crimes Code was unconstitutional under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *Sumpter*, ___ A.3d ___ 2025 WL 1743218, at *1 (Pa. Super. filed Jun. 23, 2025) (slip opinion).

- 3 -

use, manufacture, control, sell, or transfer firearms (Count 3), firearms not to be carried without a license (Count 4), carrying firearms on public streets or public property in Philadelphia, Pennsylvania (Count 5), and possessing instruments of crime (Count 6).[5] The Commonwealth subsequently amended the criminal complaint filed against Betancourt to include charges of intimidation of witnesses or victims (Count 7), and retaliation against a witness, victim, or party (Count 8).[6] At some point, the Commonwealth charged Valentin with intimidation of witnesses or victims.[7]

The municipal district court scheduled Betancourt's preliminary hearing for November 6, 2019, and scheduled Ramos' preliminary hearing for November 13, 2019. For purpose of prosecution, the Commonwealth joined the criminal cases against Ramos, Betancourt, and Valentin.[8] On November 6, 2019, the municipal district court appointed counsel to represent Betancourt and continued his preliminary hearing until November 13, 2019. At the joint November 13, 2019 preliminary hearing, Betancourt informed the

_____

[5] 18 Pa.C.S.A. §§ 2502, 903, 6105(a)(1), 6106(a)(1), 6108, and 907(a), respectively. Police officers arrested Betancourt in connection with these charges on October 22, 2019.

[6] 18 Pa.C.S.A. §§ 4952(a)(1) and 4953(a), respectively.

[7] 18 Pa.C.S.A. § 4952. Police officers arrested Valentin in connection with this charge.

[8] *See* Trial Court Opinion, 9/16/24, at 2 (stating, "[t]he cases originally had different dates for the first preliminary hearings[,] and the Commonwealth wanted all cases joined for the preliminary hearings.").

municipal district court that he retained new counsel and requested a continuance. The Commonwealth refused to sever the cases filed against Ramos, Betancourt and Valentin, so the joint preliminary hearing was continued to January 7, 2020.[9] The joint preliminary hearing was conducted over the course of several days in January 2020, beginning on January 7, 2020. At the conclusion of the joint preliminary hearing on January 24, 2020, the municipal district court held the charges filed against Ramos, Betancourt, and Valentin for court.

A joint formal arraignment was held on February 14, 2020, and, upon conclusion, a pre-trial conference was scheduled with all parties for February 27, 2020. On February 27, 2020, the trial court continued the pre-trial conference until April 1, 2020, at the request of Betancourt who sought for the appointment of new counsel. In its order granting the continuance, the trial court noted that "[h]ard paper discovery, 1 disc with 911 [emergency] calls, and 1 disc containing surveillance video" were provided by the Commonwealth to the defendants. Trial Court Order, 2/27/20.

On March 17, 2020, the Court of Common Pleas of Philadelphia County declared a judicial emergency due to the COVID-19 global pandemic, which

---

[9] **See Commonwealth v. Robbins**, 900 A.2d 413, 417 (Pa. Super. 2006) (stating, the Commonwealth is not required to sever cases even when faced with a possible Rule 600 violation), *appeal denied*, 907 A.2d 1102 (Pa. 2006).

restricted court activities.[10]   During the judicial emergency and court closure, the trial court conducted several status conferences with the parties, *via* a virtual internet-based communications platform, to monitor the progression of the cases.   At the conclusion of a pre-trial conference on September 2, 2020, the trial court noted on the record that discovery was completed and that counsel was ready to list the cases for trial.   Trial Court Order, 9/2/20. On October 28, 2020, the trial court again noted that discovery was completed and, on October 29, 2020, the trial court ordered that the joint trial would commence on October 12, 2021.   On December 3, 2020, the trial court rescheduled the commencement of the joint trial to begin on November 8, 2021.

---

[10] Our Supreme Court declared a judicial emergency due to the COVID-19 global pandemic and suspended Rule 600.  ***See In re General Statewide Judicial Emergency***, 228 A.3d 1283 (Pa. 2020) (suspending Rule 600 from March 19, 2020, to April 3, 2020); ***see also In re General Statewide Judicial Emergency***, 229 A.3d 229 (Pa. 2020) (extending the Rule 600 suspension to April 30, 2020); ***In re General Statewide Judicial Emergency***, 230 A.3d 1015 (Pa. 2020) (extending the Rule 600 suspension to June 1, 2020).  Pursuant to authority granted by our Supreme Court (***see In re General Statewide Judicial Emergency***, 228 A.3d 1281 (Pa. 2020)), the president judge of the Court of Common Pleas of Philadelphia County suspended Rule 600 from March 17, 2020, to October 1, 2021, for all cases pending before that trial court.  ***See*** Administrative Order No. 29 of 2021, 8/25/21 (C.P. Phila. Cnty. filed Aug. 25, 2021) (unpublished order); ***see also Commonwealth v. Malone***, 294 A.3d 1247, 1250 (Pa. Super. 2023) (recognizing that, the president judge for the Court of Common Pleas of Philadelphia County suspended Rule 600 from March 17, 2020, to October 1, 2021).

On February 6, 2021, Betancourt filed a pre-trial motion to sever the homicide cases (the criminal cases pending against Ramos and Betancourt) from Valentin's witness intimidation case, which did not involve homicide charges.[11]  Betancourt's Motion to Sever, 2/6/21.  Betancourt argued that the Commonwealth consolidated the three cases *sua sponte* without filing a motion for joinder and that joinder of the homicide cases with the witness intimidation case involving Valentin would result in "undue prejudice."  *Id.*  The trial court scheduled a virtual hearing on the motions to sever for March 17, 2021.  On March 17, 2021, the trial court continued the virtual hearing to March 24, 2021, and continued that virtual hearing several times thereafter.[12]  On October 21, 2021, the trial court scheduled an in-person hearing on the motions to sever for November 8, 2021, which was the scheduled start date of the trial.  On November 8, 2021, the trial court continued the hearing on the motions to sever to November 30, 2021, and set that date, November 30, 2021, as the commencement date for the trial.

_____

[11] In his motion to sever, Betancourt stated that he joined the motion to sever filed by Valentin on December 10, 2020.  Betancourt's Motion to Sever, 2/6/21.  The motion to sever filed by Valentin is not part of the certified records presently before us, however, at the hearing on the motions to sever, counsel for Valentin confirmed that he filed a motion to sever the cases in December 2020.  N.T., 11/30/21, at 6.

[12] On March 24, 2021, the trial court continued the virtual hearing to April 29, 2021.  On April 29, 2021, the trial continued the virtual hearing to September 9, 2021.  On September 9, 2021, the trial court continued the virtual hearing to October 21, 2021.

On November 30, 2021, the trial court entertained argument on the motions to sever.[13] That same day, the trial court denied the motions to sever and set the trial date for December 5, 2022, with a trial-readiness conference scheduled for November 10, 2022. Trial Court Order, 11/30/21; *see also* N.T., 11/30/21, at 21.

Prior to the November 10, 2022 trial-readiness conference, the Commonwealth contacted the trial court, as well as defense counsel, *via* electronic mail ("email") and requested that the trial-readiness conference be rescheduled to a date prior to December 5, 2022, the date set for the commencement of the trial. Commonwealth's Answer to Motion to Dismiss, 4/12/24, at Exhibit 5 (email dated Nov. 4, 2022). In response, counsel for Betancourt indicated that he was recently retained by Betancourt and was "not prepared to proceed with [Betancourt's] trial in December [2022]." *Id.* (email dated Nov. 7, 2022). Counsel for Betancourt also informally requested that the Commonwealth provide discovery that establishes "any prior contacts between [Betancourt] and federal agents either by way of surveillance videos or personal contacts during the [federal] government[']s investigations" on the ground that the discovery was "material to evaluating the federal agents['] ability to identify [Betancourt at trial]." *Id.* The trial court conducted the trial-readiness conference on November 10, 2022, and upon conclusion, cancelled the trial, which was set to commence on December 5, 2022. On

---

[13] Counsel for Ramos was not present at the November 30, 2021 hearing.

December 1, 2022, the trial court listed the trial to commence on January 8, 2024, with the trial-readiness conference to occur in December 2023.

At the December 15, 2023 trial-readiness conference, counsel for Betancourt and counsel for Valentin raised discovery issues concerning federal agents who were listed by the Commonwealth as eyewitnesses, as well as a civilian witness, who purportedly was a "government cooperator." N.T., 12/15/23, at 4-6. The Commonwealth indicated that it spoke with the United States Attorney's Office, and the federal government was "not inclined to provide [the Commonwealth] with [any information regarding the federal narcotics investigation] at this time." *Id.* at 4. The trial court provided the Commonwealth a week to resolve the discovery issues. *Id.* at 13-14. On December 21, 2023, the trial court indicated on the record that the trial was to commence on January 8, 2024.

On January 8, 2024, the trial court entertained argument on, *inter alia*, a request by Valentin to continue the trial date on the ground that the Commonwealth failed to provide discovery regarding the civilian witness that was the purported victim in the witness intimidation case against Valentin. N.T., 1/8/24, at 4-5. Counsel for Betancourt also requested "some time before the next trial listing to address any issues that may arise [from his review of discovery materials provided by, or that may be provided by, the Commonwealth]." *Id.* at 4-5.

Counsel for Valentin formally requested, *via* a motion before the trial court, that the Commonwealth provide additional discovery concerning the

"civilian witness who is the purported complainant" in the intimidation case against Valentin. *Id.* at 5. Valentin's counsel asserted that the "civilian witness" was "either a paid informant or working with the [United States Federal Bureau of Investigation ("FBI")] or [the] DEA" and that the defense parties "received no discovery with respect to deals made, money paid, relocation[,] and all other things." *Id.* Valentin's counsel argued that, at a preliminary hearing, the civilian witness testified that she had a "handler" and "was working with [a law enforcement] officer[.]" *Id.* at 6. Valentin's counsel requested that the Commonwealth provide "all information relating to whatever this [civilian witness] did, any testimony previously given, [and] any type of offers or deals [provided to the civilian witness.]" *Id.* The Commonwealth represented that it was unable to obtain the requested discovery from the federal authorities and was only able to confirm that the civilian witness was "not a cooperator . . . in any other case[.]" *Id.* at 5, 8. The Commonwealth offered to "get something in writing" stating that no additional discovery information existed. *Id.* at 10. The trial court granted the requests for continuances and agreed to provide the Commonwealth until February 8, 2024, to obtain a written statement. *Id.* at 13-14; *see also* Trial Court Order, 1/8/24.

On February 8, the trial court, at the request of the Commonwealth, permitted the Commonwealth until February 29, 2024, to obtain the written statement. On February 22, 2024, Betancourt filed a motion to dismiss the charges against him on the grounds that the Commonwealth failed to produce

"any of the materials, evidence, or documentation arising from a federal investigation that was ongoing at or near the crime scene." Betancourt's Motion to Dismiss, 2/22/24. In the alternative, Betancourt requested that the Commonwealth "be precluded from introducing any additional evidence or witness testimony that is not disclosed to [Betancourt] by February 29, 2024." *Id.* On February 29, 2024, the trial court, again at the request of the Commonwealth, permitted the Commonwealth until March 18, 2024, to obtain a written statement from federal law enforcement. On March 14, 2024, Ramos filed a motion to dismiss the charges against him with prejudice pursuant to Rule 600.

> On March 18, 2024, the Commonwealth stated that
>
> I did make contact with a [United States Attorney] - from the civil [division] of that office. They pretty much told me the same thing they have been telling me, specifically relating to [Valentin] and the one [civilian] witness I have for his case[.] They are not going to be providing me with confirmation one way or another, if [the civilian witness] is a [confidential informant] or any documentation. So this is going to be the Commonwealth's motion to [*n*]olle [*p*]ros [the charges against Valentin.]

N.T, 3/18/24, at 4-5.[14] Thereafter, the trial court *nolle prossed* the witness intimidation charge against Valentin.

_____

[14] We note that the notes of testimony from the March 18, 2024 hearing are incorrectly identified as occurring on "March 18, 2022."

Counsel for Ramos and Betancourt did not participate in the March 18, 2024 hearing.

On April 4, 2024, the trial court entertained argument on Betancourt's motion to dismiss, which was based upon the Commonwealth's failure to produce certain discovery materials, and on Ramos' motion to dismiss pursuant to Rule 600. During the course of the hearing, the trial court framed the Rule 600 issue as follows:

> [At the] moment the Commonwealth is made aware that there is potential discovery that is required to be handed over to the defense [(referring to the moment at the preliminary hearing where the civilian witness testified that she had a "handler" and was working with a law enforcement officer),] what efforts did the Commonwealth make at that time to secure the discovery that [the Commonwealth] knew might exist, to make sure that [the Commonwealth] was in compliance with the discovery rules?

N.T., 4/4/24, at 18. At the conclusion of the hearing, the trial court continued the matter to provide the parties an opportunity to submit briefs addressing the Rule 600 issue. N.T., 4/4/24, at 27-28. Meanwhile, on April 11, 2024, the trial court entered an order precluding the Commonwealth "from introducing all informant testimony and all other physical and testimonial evidence not provided to the defense prior to March 18, 2024."[15] Trial Court Order, 4/11/24. On April 12, 2024, the Commonwealth filed a response to Ramos' motion to dismiss, as well as to Betancourt's motion to dismiss, which the Commonwealth interpreted as a motion to dismiss pursuant to Rule 600. *See* Commonwealth's Response, 4/12/24, at ¶14 (stating, "Defendants filed

---

[15] The trial court order was dated April 4, 2024, and was entered on the trial court docket on April 11, 2024.

motions to dismiss the charges pursuant to [Rule 600]"). On April 22, 2024, the trial court resumed the hearing on the requests to dismiss the criminal charges pursuant to Rule 600. At the conclusion of the hearing, the trial court indicated its intent to grant the motions to dismiss the criminal charges based upon a violation of Rule 600 and provided the Commonwealth 30 days in which to assess its position on the matter. N.T., 4/22/24, at 19. On May 23, 2024, the trial court entered orders dismissing the criminal charges filed against Ramos and Betancourt for violation of Rule 600. These appeals followed.[16]

In both appeals (1449 EDA 2024 and 1450 EDA 2024), the Commonwealth raised the following issue for our review:

> Did the [trial] court err by dismissing murder and related charges under Rule 600, where the Commonwealth was trial-ready before the adjusted run date, and where [the] trial was only rescheduled beyond the adjusted run date due to what should have been deemed a defense continuance request as a matter of law?

Commonwealth's Brief (1449 EDA 2024) at 8; **see also** Commonwealth's Brief (1450 EDA 2024) at 8.

It is well-settled that

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the [trial] court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion[,] the law is overridden or misapplied or the judgment exercised is

---

[16] The Commonwealth, as well as the trial court, complied with Pennsylvania Rule of Appellate Procedure 1925.

- 13 -

manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused. The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*) (citations, original brackets, quotation marks, and ellipsis omitted; formatting modified), *appeal denied*, 875 A.2d 1073 (Pa. 2005).

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Hunt*, 858 A.2d at 1239 (citation and brackets omitted); *see also Commonwealth v. Selenski*, 994 A.2d 1083, 1088 (Pa. 2010) (stating, "Rule 600 serves to protect a defendant's speedy trial rights, as well as society's right to effective prosecution of criminal cases").

In pertinent part, Rule 600 requires a "[t]rial in a [criminal] case[,] in which a written complaint is filed against the defendant[, to] commence within 365 days from the date on which the complaint is filed."[17] Pa.R.Crim.P.

---

[17] For purpose of Rule 600, "trial shall be deemed to commence on the date the trial [court] calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*." Pa.R.Crim.P. 600(A)(1).

600(A)(2)(a). "For purpose of [Rule 600], periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth [] failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

Our Supreme Court, in **Commonwealth v. Lear**, recently explained the mechanics of a Rule 600 calculation.

> [T]he first sentence of Rule 600(C)(1) expresses the general rule[.] Rule 600 establishes two requirements that must be met for delay to count toward the 365-day deadline: (1) the delay must be caused by the Commonwealth; **and** (2) the Commonwealth must have failed to exercise due diligence. [W]here delay is not caused by the Commonwealth or delay caused by the Commonwealth is not the result of lack of diligence, it must be excluded from the computation of the Rule 600 deadline.[] The second sentence of Rule 600(C)(1) then explains that "any other periods of delay" - meaning any periods of delay not caused by the Commonwealth or not resulting from the Commonwealth's lack of due diligence - are excludable and are removed from the computation of the Rule 600 deadline.

**Lear**, 325 A.3d 552, 560 (Pa. 2024) (citations, original brackets, and some quotation marks omitted; emphasis in original). "[T]he causation analysis precedes the due diligence inquiry, and it is only when the Commonwealth both caused the delay and lacked due diligence that the delay is properly included in the Rule 600 calculation." **Id.** at 560-561 n.7. "[A]ny delay caused by the need to reschedule a trial because of a continuance attributable to the defense constitutes excludable time, even if the defendant was prepared to go to trial at an earlier date." **Commonwealth v. Walker**, 331 A.3d 43,

46-47 (Pa. Super. 2025) (original quotation marks omitted), *citing* ***Commonwealth v. Aaron***, 804 A.2d 39, 43 (Pa. Super. 2002) (*en banc*), *appeal denied*, ___ A.3d ___, 2025 WL 1981478 (Pa. 2025) (slip order). "Stated in the most general terms, when the Commonwealth causes delay [and failed to exercise due diligence], the Rule 600 clock continues to tick; when the defendant causes the delay, the clock stops."[18] ***Commonwealth v. Morgan***, 239 A.3d 1132, 1137 (Pa. Super. 2020) (citation omitted); ***see also Lear***, 325 A.3d at 560; ***Walker***, 331 A.3d at 46. Finally, "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600" and, as such, there is no need to question the causation of the passage of time.[19] ***Commonwealth v. Mills***, 162 A.3d 323, 324-325 (Pa. 2017) (stating that, the concept of "delay" in Rule 600 "refers to the passage of a period of time that is outside of the ordinary, routine[,] and expected passage of time" in a criminal case); ***see also Harth***, 252 A.3d at 616; ***Walker***, 331 A.3d at 47. "Failure to meet the rule's prompt-trial requirement constitutes grounds for dismissal." ***Mills***, 162 A.3d at 324; ***see***

---

[18] "Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." ***Walker***, 331 A.3d at 46, *citing* ***Hunt***, 858 A.2d at 1241-1242.

[19] "[J]udicial delay [(delay as a result of a trial court's congested calendar or other scheduling problems)] in conjunction with some period of delay caused by the Commonwealth" may be excluded from the Rule 600 calculation but only after the trial court determines that the Commonwealth "met its obligation to act with due diligence throughout the life of the case[.]" ***Lear***, 325 A.3d at 562; ***see also Commonwealth v. Harth***, 252 A.3d 600, 618 (Pa. 2021).

*also* Pa.R.Crim.P. 600(D)(1) (stating, "[w]hen a defendant has not been brought to trial within the time periods set forth in [Rule 600(A)(2)], at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated").

In calculating whether the Rule 600 prompt-trial requirements have been satisfied, a trial court begins by adding 365 days to the date on which the complaint was filed. The resulting date is commonly referred to as the "mechanical run date." Once the mechanical run date is determined, the trial court may, under certain circumstances, extend the mechanical run date to calculate what is commonly referred to as the "adjusted run date." If a defendant's trial has not commenced by the adjusted run date, then Rule 600 has been violated and the defendant is entitled to a dismissal of the charges. *See* Pa.R.Crim.P. 600(D)(1); *see also Mills*, 162 A.3d at 324.

In the case *sub judice*, the Commonwealth asserts that the trial court erred in calculating a violation of Rule 600 and that, instead, only 166 days should have been included in the Rule 600 calculation and that all other days between the filing of the criminal complaints and the dismissal of the criminal charges were excludable. Commonwealth's Brief at 11-18 (setting forth that the periods of October 22, 2019, to February 27, 2020, (128 days) and October 1, 2021, to November 8, 2021, (28 days) were includable in the Rule

600 calculation due to the natural progression of the case).[20] The Commonwealth maintains that the remaining periods of time were excludable from the Rule 600 calculation because the delays were attributable to defense requests for a continuance, the COVID-19 global pandemic, resolution of defense motions to sever the cases, and judicial delay. *Id.* (setting forth that delays during the periods of February 27, 2020, to March 17, 2020, (19 days) and December 5, 2022, to January 8, 2024, (418 days) were due to defense requests for a continuance; the period of March 17, 2020, to October 1, 2021, (563 days) was due to the COVID-19 global pandemic; the period of November 8, 2021, to November 30, 2021 (22 days) was due to the defense requests to sever the cases; and the period of November 30, 2021, to December 5, 2022 (370 days) was due to judicial delay during which the Commonwealth provided all mandatory discovery).[21] The Commonwealth asserts that the trial court erred in analyzing its due diligence in prosecuting the case during the period of December 5, 2022, to January 8, 2024, because the "Commonwealth had fulfilled its discovery obligations by September 2,

_____

[20] The appellate briefs filed by the Commonwealth with this Court at docket numbers 1449 EDA 2024 and 1450 EDA 2024 contain identical argument sections. *See* Commonwealth's Brief (1449 EDA 2024) at 11-18; *see also* Commonwealth's Brief (1450 EDA 2024) at 11-18. As such, a citation attributed to the "Commonwealth's Brief" references the appellate brief filed at each of the aforementioned dockets.

[21] The Commonwealth did not offer an argument as to whether, or not, the period of January 8, 2024, to May 23, 2024, was includable in the Rule 600 calculation. Commonwealth's Brief at 11-18.

2020." *Id.* at 14. The Commonwealth contends that it was not required to provide the information concerning the federal agents and the civilian witness to the defense because that information was in the possession of the federal government and inaccessible by the Commonwealth. *Id.* at 14-16. The Commonwealth asserts that, in dismissing the criminal cases, the trial court penalized the Commonwealth "for its lack of success in voluntarily acquiring additional discovery, which was [neither] in its possession [nor in its] control but which it nonetheless agreed to try to obtain as a courtesy to [the defendants.]" *Id.* at 17-18 (stating that, the "penalty to the Commonwealth of a Rule 600 dismissal indeed confirmed the wisdom of the adage that 'no good deed goes unpunished'").

In dismissing the criminal charges filed against Ramos and Betancourt based on a violation of Rule 600, the trial court explained,

> [The Commonwealth] acknowledged[, at a December 15, 2023 trial-readiness conference,] that [it] intended to call witnesses [] related to the federal government. Based on these potential witnesses [being called to testify at trial, counsel] for Betancourt, requested discovery [] related to the witnesses connected to the federal government in November 2022. The Commonwealth failed to respond to this discovery request until more than a year later during a trial[-]readiness conference [on December 15, 2023.] After the year-long delay, the Commonwealth responded at the [trial-readiness conference] that [it] had spoken with an unnamed assistant United States attorney [who] was not inclined to provide [the Commonwealth] with anything at this time.

> The Commonwealth argued that discovery related to the federal agents and their investigation was not required because it had nothing to do with the instant case. However, the Commonwealth acknowledged later [during] that same [trial-readiness conference] that the lack of disclosure presented a problem. Had

- 19 -

the Commonwealth acted on this discovery request sooner, all of these cases would likely have been resolved sooner and an appropriate remedy fashioned to address [] any concerns. As such, the Commonwealth's failure to act on the pending discovery request is a failure of due diligence.

Despite this delay, [the trial] court gave the Commonwealth more time to address this ongoing discovery issue. Yet, at the next hearing[, on January 8, 2024,] the Commonwealth did not provide the discovery but made a clear promise that it would get something in writing from the federal government to show it refused to provide further evidence. After another month, the Commonwealth again stated[, on February 8, 2024,] that it needed more time as [it had not] been able to [obtain] formalized documentation. These delays were entirely within the Commonwealth's control and shows a lack [of] due diligence in these cases.

Further, the Commonwealth acknowledged[,] in the February 8, 2024, hearing[,] that it had "started doing research" about the discovery issue that had been pending since [November] 2022. It is unclear to [the trial] court if that meant the Commonwealth was conducting additional research on the topic or just beginning to research the topic. However, regardless of meaning, the Commonwealth, having had more than a year to research the discovery issue, yet not being prepared to make any arguments on the matter during these proceedings, failed to show that it was prosecuting the case with due diligence.

Eleven days after the last hearing, the Commonwealth informed the [trial court, on February 29, 2024,] that it had requested letters from the federal government about their involvement, but the Commonwealth could provide no further updates on the timeline. Despite its seemingly recent requests for information, the Commonwealth now acknowledged that without the federal discovery, it would be unable to call the federal agents. The Commonwealth, based on its inability to get discovery, chose to *nolle pross* the charge[] against [Valentin because prosecution of Valentin's case] required this discovery.

While [the trial] court accepted the Commonwealth's decision to *nolle pross* [the criminal charge against Valentin,] the Commonwealth still failed [to] act with due diligence in failing to timely prosecute the joined cases. The Commonwealth had over 1000 calendar days to determine that [] these cases were legally

- 20 -

> sufficient without discovery and its failure to act sooner shows a lack of due diligence.
>
> This entire discovery issue would likely have been resolved sooner if the Commonwealth had been diligent in its attempt to research or gather discovery around the time of [the] request. It is unclear to [the trial] court when or how often the Commonwealth contacted the United States Attorney's Office to collect discovery but did mention doing so. Further, the Commonwealth stated that it spoke with three people, but still had not received documentation. [The] Commonwealth must do more than merely request [discovery] two or three times and failure to do more is lack of [due] diligence.

Trial Court Opinion, 9/16/24, at 10-13 (record and case citations, extraneous capitalization, some quotation marks, original brackets, and footnotes omitted).

The criminal complaints were filed against Ramos and Betancourt on October 22, 2019. Therefore, the mechanical run date was October 21, 2020.[22] We turn now to a calculation of the adjusted run date.

**October 22, 2019 – November 13, 2019**

In Ramos' case, his first preliminary hearing was scheduled for November 13, 2019. Therefore, the 22-day period between October 22, 2019, and November 13, 2019, is included in the Rule 600 calculation as the natural progression of Ramos' case. *See Mills*, 162 A.3d at 325.

In Betancourt's case, his first preliminary hearing was scheduled for November 6, 2019. Therefore, the 15-day period between October 22, 2019,

_____

[22] The calendar year 2020 was a leap year and, as such, contained an additional day.

and November 6, 2019, is included in the Rule 600 calculation as the natural progress of Betancourt's case. *See id.* On November 6, 2019, Betancourt's preliminary hearing was continued to November 13, 2019, at the request of Betancourt for the appointment of counsel. The 7-day period between November 6, 2019, and November 13, 2019, is, therefore, excluded from the Rule 600 calculation because the delay was due to a continuance at the request of Betancourt. *See Walker*, 331 A.3d 46-47.

**November 13, 2019 – January 7, 2020**

At the November 13, 2019 joint preliminary hearing, counsel for Betancourt again requested a continuance. Therefore, the 55-day period between November 13, 2019, and January 7, 2020, is excluded from the Rule 600 calculation in both cases because the delay was caused by Betancourt's request for a continuance. *Id.*

**January 7, 2020 – January 24, 2020**

The joint preliminary hearing was conducted over the course of 4 days, starting on January 7, 2020, and concluding on January 24, 2020. The 17-day period from January 7, 2020, to January 24, 2020, is included in the Rule 600 calculation in both cases as the natural progression of the cases. *See Mills*, 162 A.3d at 325.

**January 24, 2020 – February 14, 2020**

The trial court conducted formal arraignment in both cases on February 14, 2020. Therefore, the 21-day period from January 24, 2020, to February

14, 2020, is included in the Rule 600 calculation in both cases as the natural progression of the cases. ***See id.***

**February 14, 2020 – February 27, 2020**

The trial court conducted a pre-trial conference on February 27, 2020. Therefore, the 13-day period from February 14, 2020, to February 27, 2020, is included in the Rule 600 calculation in both cases as the natural progression of the cases. ***See id.***

**February 27, 2020 – March 17, 2020**

At the February 27, 2020 pre-trial conference, Betancourt requested a continuance to obtain new counsel. As such, the 19-day period from February 27, 2020, to March 17, 2020, is excluded from the Rule 600 calculations in both cases because the delay was caused by Betancourt's request for a continuance. ***See Walker***, 331 A.3d 46-47.

**March 17, 2020 – October 1, 2021**

On March 17, 2020, the Pennsylvania judicial system, including the Court of Common Pleas of Philadelphia County, experienced a shutdown due to the COVID-19 global pandemic. The Court of Common Pleas of Philadelphia County, as discussed *supra*, suspended Rule 600 until October 1, 2021. Therefore, the 563-day period from March 17, 2020, to October 1, 2021, is excluded from the Rule 600 calculation in both cases. ***See Lear***, 325 A.3d at 563.

**October 1, 2021 – November 30, 2021**

During the judicial closure due to the COVID-19 global pandemic, Betancourt filed a motion to sever the cases. The motion remained outstanding on October 1, 2021, and the trial court denied the motion on November 30, 2021. Therefore, the 60-day period from October 1, 2021, to November 30, 2021, is excluded from the Rule 600 calculation in both cases due to Betancourt's motion to sever. *See Walker*, 331 A.3d 46-47.

**November 30, 2021 – November 10, 2022**

Upon denial of Betancourt's motion to sever on November 30, 2021, the trial court indicated that three weeks were necessary to conduct the trial. N.T., 11/30/21, at 22. Based upon the trial court's schedule, December 5, 2022, was the first available date to conduct the trial. *See* Trial Court Opinion, 9/16/24, at 3-4 (stating, December 5, 2022 "was the earliest possible date consistent with the [trial] court's calendar, given that there were three codefendants and those trials require more time to schedule [and] complete"). As such, the trial court ordered the trial to commence on December 5, 2022, and a trial-readiness conference was scheduled on November 10, 2022.

At the conclusion of the November 30, 2021 hearing, there were no outstanding discovery issues, and the trial was set to commence on December 5, 2022. Therefore, the 345-day period from November 30, 2021, to

November 10, 2022, is excluded from the Rule 600 calculation in both cases due to judicial delay with all parties being ready to proceed to trial.[23]

**November 10, 2022 – January 8, 2024**

On November 10, 2022, the trial court conducted a trial-readiness conference at which counsel for Betancourt requested a continuance. Because the defense requested a continuance, the trial court, on December 1, 2022, cancelled the trial that was scheduled to commence on December 5, 2022, and ordered the trial to commence on January 8, 2024. The trial court included the 424-day period from November 10, 2022, to January 8, 2024, in its Rule 600 calculation based upon the Commonwealth's failure to act with due diligence in providing certain discovery to Betancourt. Trial Court Opinion, 9/16/24, at 10-11 (stating, "the Commonwealth's failure to act on the pending discovery request is a failure of due diligence"). We cannot agree that this time period is properly included in the Rule 600 calculation.

_____

[23] Although the trial court, in relying on "judicial delay" to exclude this period of time from its Rule 600 calculation, did not analyze the Commonwealth's due diligence (as required by **Lear**, **supra**, and **Harth**, **supra**), the record demonstrates that the parties were ready to proceed to trial. At the time the trial court denied the motion to sever on November 30, 2021, there were no outstanding pre-trial motions and the trial court noted several times on the trial court docket that discovery was complete and the parties were ready to for trial. **See** Trial Court Docket (Ramos) at 9/2/20, 10/28/20, 10/29/20, and 12/3/20; **see also** Trial Court Docket (Betancourt) at 10/28/20, 10/29/20, and 12/3/20; **Mills**, 162 A.3d at 325 (stating, "[w]here a trial-ready [Commonwealth] must wait several months due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable").

In applying the mechanics of Rule 600, as explained in **Lear**, **supra**, to the case *sub judice*, we find that the trial court abused its discretion in attributing the 424-day delay from November 10, 2022, to January 8, 2024, to the Commonwealth based upon what the trial court determined was a lack of due diligence by the Commonwealth in prosecuting the cases against the defendants. **See Commonwealth v. Wiggins**, 248 A.3d 1285, 1289 (Pa. Super. 2021) (stating, the trial court must exercise discretion in ascertaining the cause of the delay). In reaching its conclusion that the 424-day period should be included in the Rule 600 calculation, the trial court overlooked Betancourt's request for a continuance that, ultimately, caused the delay in the commencement of the trial. As evidenced by an email dated November 7, 2022, counsel for Betancourt intended to request a continuance at the November 10, 2022 trial-readiness conference because he was "not prepared to proceed with [Betancourt's] trial in December [2022.]" **See** Commonwealth's Response, 4/12/24, at Exhibit 5 (email dated Nov. 7, 2022) (stating, "I [(referring to Betancourt's counsel)] will not be prepared to proceed with [Betancourt's] trial in December [2022]. As you know[,] I am new to the case[,] and I am attached to another homicide [case] in Schuylkill County[, Pennsylvania] during the same week of [December 5, 2022.] I shall inform [the trial court] at our upcoming [trial-readiness] conference."). At the conclusion of the trial-readiness conference on November 10, 2022, the trial court made a notation on the trial court docket that the trial scheduled for December 5, 2022, was cancelled. **See** Trial Court Docket at "Status

- 26 -

Listing" (11/10/22). On December 1, 2022, the trial court granted Betancourt's request for a continuance and ordered the trial to commence on January 8, 2024, with a trial-readiness conference scheduled for December 15, 2023. Therefore, the delay in the prosecution of the case was caused by Betancourt's request for a continuance on November 10, 2022, and the 424-day period from November 10, 2022, to January 8, 2024, is excluded from the Rule 600 calculation in both cases.[24] *See Walker*, 331 A.3d 46-47.

_____

[24] We are cognizant that, in the email exchange with the Commonwealth, counsel for Betancourt made an informal request for discovery related to the federal agents. *See* Commonwealth's Response, 4/12/24, at Exhibit 5 (email dated Nov. 7, 2022) (stating, "In reviewing the [case] file[, I (referring to Betancourt's counsel)] did not see any discovery materials from the federal investigation. If the Commonwealth intends to use federal agents for purpose of making identifications from videos [at trial], then I would request documentation [] establishing any prior contacts between [Betancourt] and [the] federal agents either by way of surveillance videos or personal contacts during the government[']s investigations. I believe that [this documentation is] material [in] evaluating the federal agents['] ability to identify [Betancourt] at his homicide trial."). Pennsylvania Rule of Criminal Procedure 573 requires the Commonwealth, upon a request by a defendant (whether *via* an informal request or a formal request in the form of a motion), to disclose, *inter alia*, "the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification[.]" Pa.R.Crim.P. 573(B)(1)(d); *see also Commonwealth v. Long*, 753 A.2d 272 (Pa. Super. 2000) (stating that, "by the express terms of [Rule 573], in order for the Commonwealth's mandatory duty to disclose material evidence to be triggered there is a corresponding requirement that a request for disclosure of discoverable items must first have been made by the defendant to the Commonwealth"). While Rule 573(B)(1) mandates that the Commonwealth provide disclosure of certain evidence upon request by a defendant, the Commonwealth's obligation does not extend to information that is not within the Commonwealth's control, including information or evidence that is in the possession of the federal government and its agencies. *Commonwealth v. Santos*, 176 A.3d 877, 883 (Pa. Super. 2017) (stating, "the Commonwealth's obligation extends to

**January 8, 2024 to March 14, 2024**

On January 8, 2024, Betancourt requested a continuance to examine the discovery materials provided by the Commonwealth, or that may be provided by the Commonwealth, in the future, as part of his informal request for additional discovery. N.T., 1/8/24, at 4-5 (stating, "there's a number of things in the discovery I [(referring to Betancourt's counsel)] did receive. Surveillance by [federal agents] that captured some of the incidents and also some alleged drug activity. I just want to know if the Commonwealth is going

_____

[] evidence in the files of police agencies **of the same government** bringing the prosecution" (citation and original quotation marks omitted; emphasis added)); *see also Commonwealth v. Roney*, 79 A.3d 595, 608 (Pa. 2013) (stating, "[t]he duty to disclose is limited to information in the possession of the government bringing the prosecution"); *Commonwealth v. McElroy*, 665 A.2d 813, 821 (Pa. Super. 1995) (stating that, the Commonwealth is not obligated to disclose evidence to which it has no access and that is not in the Commonwealth's possession).

In the case *sub judice*, the Commonwealth maintained that the information requested by Betancourt (and by Valetin at the January 8, 2024 hearing) was in the possession of, and under the control of, the United States government as part of an undercover criminal investigation being conducted by the DEA and that the United States Attorney's Office declined to provide information surrounding the investigation to the Commonwealth. As such, the Commonwealth was under no obligation to provide this evidence pursuant to Rule 573 because the evidence was not in the possession of, or under the control of, the Commonwealth. While the Commonwealth must act with due diligence in obtaining formal confirmation that the evidence was inaccessible and outside the control and possession of the Commonwealth, an examination of whether, or not, the Commonwealth acted with due diligence by the trial court, under the circumstances of the case *sub judice*, was unnecessary because the Commonwealth was not the cause of delay. *See Lear*, 325 A.3d at 560-561 n.7 (stating, "the causation analysis precedes the due diligence inquiry"). The delay was caused by a defense request for a continuance.

to use that. I want some time before the next trial listing to address any issues that may arise from that, even getting materials or not."). Valentin also requested a continuance because "[w]e received no discovery with respect to deals made, money paid, relocation[,] and all other things" pertaining to the civilian witness. *Id.* At that point, Valetin made a formal request that the Commonwealth provide "any and all information relating to whatever [the civilian witness] did, any testimony previously given, [and] any type of offers or deals [the civilian witness] was involved in." *Id.* at 6. The trial court granted the defense requests for a continuance and provided the Commonwealth some additional time in which to obtain written confirmation that the federal government refused to provide the Commonwealth any information regarding the federal agents or the civilian witness.[25] Meanwhile, on March 14, 2024, Ramos filed a motion to dismiss the charges filed against him citing a violation of Rule 600.

Upon review, we find that the trial court abused its discretion in attributing the 66-day period from January 8, 2024, to March 14, 2024, to the Commonwealth and including the 66 days in its Rule 600 calculation. The delay of the trial from January 8, 2024, to March 14, 2024, when Ramos filed his Rule 600 motion, was caused by the motions for continuances lodged by

_____

[25] In providing the Commonwealth with additional time to obtain the written confirmation, the trial court appears to have granted the defendants' requests for a continuance on January 8, 2024. The trial court did not, however, enter an order granting the motions for a continuance until March 18, 2024.

Betancourt and Valetin on January 8, 2024. Therefore, the 66-day period is excluded from the Rule 600 calculation in both cases. ***See Walker***, 331 A.3d 46-47.

**March 14, 2024 to April 22, 2024**

The delay in prosecution from March 14, 2024, to April 22, 2024, was caused by Ramos' request to dismiss the criminal charges for violation of Rule 600. Therefore, this 39-day period is excluded from the Rule 600 calculation in both cases. ***See Walker***, 331 A.3d 46-47.

**April 22, 2024 to May 23, 2024**

On April 22, 2024, the trial court stated that it was going to grant the Rule 600 dismissal requests. The Commonwealth requested a continuance to determine the possibility of seeking reconsideration of the trial court's decision or pursuing appeals of the trial court orders dismissing the cases. On May 23, 2024, the trial court entered orders dismissing the criminal charges filed against Ramos and Betancourt for violation of Rule 600. Because the Commonwealth requested a 30-day continuance, the 31-day period from April 22, 2024, to May 23, 2024, is attributable to the Commonwealth and, therefore, is included in the Rule 600 calculation for both cases.

For the reasons discussed *supra*, we find that the trial court erred in including 1571 days, as applied to Ramos, and 1578 days, as applied to Betancourt, in its Rule 600 calculation. In applying the mechanics of Rule 600, we find that the adjusted run date for Ramos is Monday, February 10, 2025, and the adjusted run date for Betancourt is Monday, February 16,

2025.[26]   The trial court dismissed the criminal charges against Ramos and Betancourt pursuant to Rule 600 on May 23, 2024, well before the expiration of the period of time in which the Commonwealth was required to bring the defendants to trial.   Consequently, we vacate the May 23, 2024 orders and remand these cases for further proceedings.

Orders vacated.  Cases remanded.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/18/2025

_____

[26] In applying the includable periods of time to the Rule 600 calculations, the actual adjusted run dates for Ramos and Betancourt fell on Saturday, February 8, 2025, and Saturday, February 15, 2025, respectively.  When the last day of any time period falls on a Saturday or Sunday, such day, or days, are omitted from the computation.  **See** 1 Pa.C.S.A. § 1908.